Good morning, counsel. Good morning. May it please the court, Mark Frederick on behalf of appellant and petitioner in this matter, Mr. Kulcsar. Your Honor, this matter involves two issues for the court. The first is whether the petitioner's due process rights were violated by the 25-year delay in prosecuting the case. The second issue is whether there is substantial evidence to support the conviction in this matter. With the court's permission, I'm going to focus on the first issue, and that is the due process delay. So the court is presented with an issue that I think is fairly unique in that the Mr. Kulcsar's matter does not involve a crime that has a statute of limitations in California. So most cases that involve due process claims where there's been a substantial delay, there is, as the court knows, there is a statute of limitations. And most courts find that the statute of limitations itself prevents prolonged delay, which would result in due process violations. So because we're presented with a murder in this matter, an alleged murder, and murder does not have a statute of limitations, it's a little bit different situation in that due process is the only protection against prolonged delay causing prejudice to the petitioner. So in this matter, the lower courts found that there was no prejudice suffered by the 25-year delay, and that was an unreasonable application of established law. And what Supreme Court case would you cite to that effect? I would cite both Lavasco and I believe it's Mays, Your Honor. And the reason for that is that those two cases both lay out that, especially in Lavasco, that in cases of unreasonable prolonged delay, the court should look first to determine whether there has been prejudice as a result of the delay. So really there's been a three-part, it's looked at as a two-part test most often, but it's really a three-part test because first there must be an unreasonable delay. And I think we could all agree that 25 years in a matter where the case was simply put aside for at least 20 years, there just was a simple disinterest in pursuing the matter. So let me ask you this. As you know, we live in an era of DNA testing. And there have been recently a number of murders, unsolved murders, going back sometimes decades and decades, that were suddenly provable based upon DNA. Are you saying that such long, long-delayed cases are per se violations of the Due Process Clause? No. What's the difference? So the difference is, assuming that the petitioner in those matters or the defendant in those cases could establish prejudice from the delay, which is the first hurdle, the court then has to engage in a balancing test to determine whether the delay is justified by, for instance, advances in investigative technologies. That would be one thing. Or whether there was new evidence that was found. Or whether there were new witnesses who came forward. Or a confession by the defendant. These are all things that are borne out by the cases. In this matter, there's nothing like that. This is simply a case where four months after the incident, the police and the prosecution, who had already decided there was insufficient evidence to proceed with the prosecution, put the case aside, put it away, and did nothing for 20 years. At that point, I think after 20 years, the record shows that they took some evidence out of storage and had it retested. I think it was the pants and another item that were found hanging in the defendant's shower, in the petitioner's shower, when the police arrived at his house. Nothing new was found from those. The case was again put away for another five years. Nothing done. And it's at that point, this is what really makes this case unique, it's at that point that police go out and they re-interview the defendant. And when they re-interview the defendant, he tells essentially the same story. Now, I know that the state takes the position that his story substantially differed from the one that he gave to police 25 years earlier when he was arrested. That simply isn't true. 25 years later, when he was interviewed, he told the police that on the morning of his arrest, he was on his way to his brother's house to do some laundry and, excuse me, 25 years later, he told the police that he was on his way to his brother's house to babysit his brother's children. 25 years earlier when he was interviewed, he again told the police, I was on my way to my brother's house. The only difference was he said that he was on his way over there to do some laundry and to work on his car. So this case, essentially the theme of this case by the prosecutor, that was their aha moment, right, that all of a sudden it's, well, you don't recall why you were going over there. So that's sufficient for us to now charge you. And the theme of our case is going to be you lied. And so it's actually the delay that created the evidence that caused them to go forward with the prosecution in this matter. It wasn't some DNA evidence that they discovered years later. It was the delay itself which caused the petitioner's memory to fade. And now after all these years, sure, he remembers that he was going to his brother's house. He remembers differently the reason for it, for his travel there. And in a case where the prosecutor relied so heavily on those statements and an argument that his lies, the petitioner's lies in those statements, supported a conviction, it was absolutely critical for the petitioner to be able to present evidence that would have corroborated his statements. And due to the passage of time and police negligence or whatever else it was, we don't know from the record, the evidence that would have corroborated those statements is gone. Let me ask you something slightly different. Perhaps your colleague is going to be the one that does this, so let me know and I'll wait for him. But you raised in your pleadings the issue of the lost knife and towel, but I don't see that those items appeared to have been raised before the state court as causing prejudice, and the Court of Appeal didn't mention them in its analysis. Can we consider them now, or are they really unexhausted issues? No, we certainly argued at every level that all of the physical evidence had been lost in this matter and that that prejudiced the defendant's ability to defend the case. So you're saying that my understanding of the record is incorrect on that, right? I think that we did raise the loss of evidence. I can't recall as I stand here now whether we specifically argued that the knife was an item that was lost, but I do know that we argued that all of the items of evidence, none of the physical evidence that was collected 25 years earlier was available at the time of trial. And that argument's been raised at every level. So you don't think there's any chance of an unexhausted aspect of this? No. Okay. And so I would just the idea that there was no prejudice established in this matter, which would have caused the court to go forward with the next step, which is the balancing test. The lower courts found they didn't need to get to the balancing. The state chose not to come forward with any reason for the delay. Instead, they relied on the fact that no prejudice was shown by the petitioner. And that's just simply not the case. Let me ask you this, counsel, and, again, maybe your colleague would answer this. As you know, under Jackson, the question is whether any juror taking the composite evidence could have ruled for the prosecution. It's a first-degree murder case. We'll get to whether there's sufficient evidence in a minute. But obviously the jury did rule for the prosecution enough to convict your client. How do we get around Jackson in this situation? Very thin evidence, very thin evidence, almost entirely circumstantial, but they ruled in favor of the prosecution. How do we deal with the Jackson problem? I think that that actually comes back to the due process issue a little bit. And the reason for that is that the evidence, as the court has noted, was extremely thin. It's basically motive and opportunity and nothing else. And that's what it comes down to. And so the question of whether any juror could reasonably have convicted the defendant, really the court's going to have to look at whether there's substantial evidence to support that. And I don't believe that any reasonable juror could find that. And the reason for it is that the reason that the jury ultimately convicted the defendant was because the prosecutor relied so heavily on what he called lies. And if we look through the closing argument in this matter presented by the prosecutor, most of it is devoted to what he called lies by the defendant.  And the petitioner's opportunity to defend against those allegations was destroyed by the 25-year delay. And so with the court's permission, Your Honor, I'd like to reserve the time. Very well. Thank you. Good morning, Your Honors, and may it please the Court. Deputy Attorney General Jonathan Krauss on behalf of Respondent. I'd like to begin by talking very briefly about the standard of review. And I think it's important because while the argument has somewhat changed here today from Petitioner, in the briefing, he alleges he's entitled essentially to de novo review of these claims. And while that's true as far as it pertains to the district court's denial of habeas relief, there is, of course, as this Court acknowledged, a reasoned State court decision in this case, the Court of Appeals' denial of both of these claims on direct appeal. Accordingly, and Petitioner has not even attempted to cite AEDPA anywhere in his pleadings, he is not entitled to relitigation of these claims because he cannot show, and indeed has not even really attempted to show, that the Court of Appeals' denial of his claims was contrary to or an unreasonable application of controlling Supreme Court precedent. Since we don't have a whole lot of time on this, let me just tell you what I'm concerned about. We hear AEDPA all the time. It runs through almost all of our collateral appeal criminal cases. And the State court decision. But I'm very troubled by the fact that this man was convicted of first-degree murder. You've got to show premeditation. What's the best evidence for that? It is so paper-thin on the motive, the premeditation. The other part I get. But what's your best evidence, as the State court of appeal indicated, that this was a premeditated murder? Well, Your Honor, the first thing I would say as to that is that the State court of appeal did not consider premeditation a deliberation. It was not raised on appeal. The district court denied it sui sponte. It wasn't raised there either. So I don't answer the question, but to that extent. Okay. When you get the sufficiency of evidence, which was raised. Yes. And you're talking about first-degree murder, isn't that the bottom line? I mean, isn't that a, you know, that's the essence of the concern. So it wasn't raised. The district court didn't talk about it. Isn't that still a key factor in the sufficiency of the evidence? Because you can't have first-degree murder unless you have a premeditation. And what do we do with that? Well, sure, Your Honor. And it absolutely is an essential part of the first-degree murder calculation. You are correct 100%. My only point was, while Petitioner challenged the sufficiency of the evidence, he only challenged it as to identity, whether the evidence was sufficient that it was him and not someone else that had committed the murders. Now, be that as it may, if this Court is electing to consider the premeditation claim, there was ample evidence here. But in the context of sufficiency of the evidence? Yes. Okay. Yes, Your Honor. There was ample evidence presented to support a finding, the jury's finding, that this was a premeditated murder. As far as planning activity goes, as I noted in my briefing, these are, of course, the three factors, planning activity, manner, and motive. The planning activity, we know that Petitioner harbored a grudge against Archie. He had been making violent threats against him for a period of weeks or months following Mary Ann's decision to leave him and move back in home with her family. When you say threats, plural, can you itemize those separate ones? I certainly am aware of the one where he said he would get him. But where else? Well, Your Honor, he had said on numerous occasions when he relieved these answering machine messages that were volatile sort of messages, he said first, he threatened to kill both of them, frankly. He said if she didn't return to him, he would, I don't remember the exact wording, something like make her pay or something like that, or that she would suffer as a result. He did make repeated threats against Archie as well. I don't remember the exact wording of it. But this is, I think, the important point. How did he make these in person, on the phone, in writing? For a while it was over the phone. He had called several times. Gary, the son, would overhear his father talking to someone, and his father would hang up the phone in anger, and then the phone would ring again, and it would go to, not voicemail, I guess, answering machine, and the message was a threatening message from Petitioner. So all this leads up to about a week or so before the incident, when Petitioner shows up unannounced. He just arrives at the house. He's carrying a loaded firearm that he had purchased only about two weeks before, and he waited the necessary two weeks or 15 days before arriving at the house. That same day or the day after, he shows up at the house, and he acts in a possessive way towards Marianne, refers to her as belonging to him. Gary, the son who was there, described his behavior as deranged. Not only did he have a gun with him, he also had a magazine of ammunition. Now, he said, when confronted with this, that he was going to kill himself if Marianne did not come back to him. The jury, however, was entitled to believe that he had more violent means in mind here, that he was actually planning to do something else. Now, importantly, though, he goes away that day. Marianne talks him down. He comes back several days later, a few days before the murder, and he tells Marianne, cryptically, perhaps there's a reason why he didn't kill himself, which Marianne takes to mean that he came to understand that if Archie were out of the way, he could be with her. And, of course, a day or two later on, Archie shows up, murdered in the driveway of his home. This was, again, a violent ambush. There is no evidence that this was anything other than a targeted attack against Archie. No evidence whatsoever that this was a robbery. He had a wallet full of money. The car was left in the driveway running. Any implication by a petitioner that money may have been taken from the garage is refuted by the fact that the door was closed when Gary came outside. So that's the planning activity. The fact that he brought a knife to the scene of the crime demonstrates planning activity. Was the time of the attack argued at trial as a means of premeditation? The fact that it didn't happen when there's a lot of foot traffic. It happened very early in the morning. Absolutely. And it's certainly suspicious that he knew exactly where Archie would be at around 530 in the morning. And that sort of goes to my point, it was argued at trial. This is no mere random attack. And, again, there's no evidence that it was any sort of robbery. So that's the planning activity. The next factor, manner of killing, repeated stab wounds, including one in the groin area, which the detectives testified certainly could have been evidence of a jilted lover exacting revenge. And the motive, I think here, as I've already discussed, I've gone through this, the motive is clear. The only person, according to Mary Ann and Gary, who would have wanted to do Archie harm was petitioner. They immediately came to the conclusion when they found his dead body on the driveway that it was petitioner who must have done it. And, again, if that were all it was, I would concede that may not be enough. However, there's other circumstantial evidence here. There's the fact that when the police showed up at Petitioner's house, the hood of his car was red hot on a very chilly morning, which suggested and led to the reasonable inference that he had driven from Long Beach where he lived to Torrance to kill Archie before then returning. Now, he alleged at various points that he, well, no, I didn't drive that far, I only drove a mile or two. And he did, of course, give conflicting statements about this, materially conflicting statements, despite what he alleged was a clear memory of what happened that day. And an expert testified for the prosecution that the car would not have been that hot had he only driven a mile or so, which is what he alleged. And then, of course, we also have the fact that a wet pair of pants and a wet shirt were found hanging to dry in Petitioner's shower when the police arrived. The pants had been spot cleaned, leading to the very reasonable inference he was trying to cover the evidence of his crimes. And, again, Well, let's go to the prejudice question. Sure. And the government's position is that the unavailability of all this physical evidence, it's only speculation, and speculation is insufficient under the law. But that's a little troubling when you have an appellant who's got all kinds of different things that he thinks, for example, the auto part employee who could have, if identified, been able to confirm that he had to get parts for his engine, and that can explain that. So this issue of speculation is a little bit of a concern, even though I recognize that's what our law is. Correct, Your Honor. And this brings me to one point I want to make before I go too far. What Petitioner argues here today is that essentially the delay itself is the prejudice. He basically argues, and he didn't say the case, but in his briefing, he argued under Doggett that he's entitled to a presumption of prejudice, that the mere fact that this was an admittedly lengthy delay is enough to signify prejudice. That's not the case. Doggett is inapplicable in the pre-indictment delay context. Doggett only applies in the post-indictment speedy trial right context. And so what Petitioner is trying to do here today is argue first, well, the delay is most important, and then we can talk about the rest of it. But under Levasco, which is the controlling case in this area that the Court of Appeal relied upon, he must first show actual prejudice. Now, the Court of Appeal reasonably found that he could not demonstrate more than pure speculation about any of this evidence. Now, to Your Honor's point about the Pep Boys employee, the Court of Appeal reasonably rejected that claim. What Petitioner was arguing was, well, I went to the Pep Boys the day before the murder and I purchased an auto part from an employee, and if I could have produced that person, I could have demonstrated or I could have corroborated my story that that's where I was going that morning when the police arrested me. I was going to work on my brother's car. But the Court of Appeal found that speculative for the following reasons. First, because we have no reason to believe he actually went and bought that part. Even if we did, we have no way to know who this person was. We have no way to know if this person would have remembered Petitioner in 1985 or in 2010 when the trial happened. And more importantly, let's say the Court of Appeal said this. Let's say we believe that he purchased this part. It would not have made a difference because all it would have done perhaps is explain where he was going when he was arrested, which was around 630 or so when the police actually confronted him in front of his house. It would have done nothing to explain or provide him an alibi for where he was an hour or so prior when Archie was killed in his driveway. And so the Court of Appeal found that that was a speculative claim. There were others that they rejected regarding, again, money missing from the garage. The Court found there was no evidence that money went missing from the garage. There was a suggestion that a box of money went missing at some point, but, again, no idea when. And, again, no suggestion that this was anything other than a targeted attack. And I can go through each piece of evidence if Your Honor would like, but the overarching point here is that each of Petitioner's allegations of prejudice was, according to the Court of Appeal, and, again, reasonably applying Levasco under the ADPA, those arguments were entirely speculative and, in some cases, entirely unsupported by the record. And here I would then just briefly go on to the last point, which is that even if Petitioner, even if this Court finds Petitioner can get through that prejudice gateway, because the Court of Appeal found that was dispositive. That's what Levasco finds. If you can't show prejudice, that's the end of the inquiry. Even if we can, even if he can, he still can't show that the prejudice he suffered, to whatever extent, outweighed the reasons for the delay and the length of the delay. He would need to show, under Levasco, some sort of governmental culpability for the delay. It is not sufficient to just say, well, there was a delay and it was lengthy. Under Levasco, or I'm sorry, let me take it back for a second. What the record shows here is that the prosecution in 1985 elected not to prosecute. That was within their right. They were under no duty to prosecute Petitioner until they felt absolutely certain they could get a conviction beyond a reasonable doubt. And what Petitioner alleges is that the case essentially went away and people ignored it for many years. It's true that it became a cold case, one of many. However, it was reopened some years later as part of numerous cases that were reopened by the DA's office at that time to investigate these cold cases. Predominantly for DNA, which is not implicated here, but that was the reason why they reopened them. And this was one of many, many cases that this particular DA, who handled this trial, was dealing with. The DA felt much more confident about the case than the DA had 25 years earlier. The DA told the detectives, the investigators, to go out and re-interview. And again here, Petitioner came forward with another contradictory statement. So again, what the record shows here is at most an investigative delay, which is the kind of delay that the Supreme Court in Lavasco found does not offend due process. Absent any sort of showing of governmental culpability, he can't make that showing. And the last point I want to make on this is that for Petitioner to argue that the case became stronger against him in 2010 than it would have been in 1985 is belied by the record of the trial. What we know, if anything, is that the trial became more difficult for the prosecution to prove after 25 years. They've had this additional statement, which is important, but other than that, the evidence was pretty much the same as they would have presented in 85. The key difference, though, is that Mary Ann, who was of course a key witness in all this, by 2010, she had been with Petitioner for 25 years. And she became, for the prosecutor, a very difficult, very hostile witness. He had to impeach her for days. And one could imagine that 25 years earlier, prior to this long period of being together, her testimony may have been more helpful. I think it's reasonable to assume it would have been. And my point of bringing that up is only to say that Petitioner cannot really show in any concrete way that the trial that he had in 2010-2011 was unfair or that it was any more difficult for him than it would have been in 1985. If there are no other questions, Your Honors, I'm prepared to submit. Okay. Thank you very much, Counsel. Thank you. First of all, I think you can agree that this is not a de novo review. It's not. It's a de novo review of the district court's decision, but it's not a de novo review. I agree with that. All right. So we still don't have any reason for the delay. Today, as we stand here, there is still no justification for the delay. And the court asked a very important question, that is, what about this idea that he went to Pep Boys the day before? Well, the prosecutor relied so heavily on the fact that that was a lie that he spent much of his closing argument describing it as a lie. And the interesting thing about it is the police officer, and there's a stipulation to this at the lower court level, the police officer had a receipt in his possession from Pep Boys the day before. And so had the petitioner, had that not been lost and had it been in the possession of the petitioner at the time of trial, he could have shown, yeah, that was not a lie. That was the truth. When the police stopped me that morning, I was on my way to my brother's house to change my oil and change the oil filter. And that would have been shown on that. I hate to interrupt you, but the clerk mentioned this before. You have a colleague. Are you splitting some time or are you taking the whole thing at this point? We're not splitting time. Okay. All right. Very well. So that's a critical piece of evidence.  And he was going over to his brother's house to do laundry. And a police officer testified at trial, well, the laundry in the laundry basket inside the car looked clean to me. Well, the petitioner testified it wasn't clean. He said he was going to wash the laundry. If they would have maintained the basket of clothes instead of it disappearing over the delay of the case, that's another thing that he could have said, I'm not lying. And the prosecutor's closing argument goes from a half hour down to 20 minutes because he doesn't have those items to rely on anymore. If they're not important, why were they relied on so heavily at the trial court level? This case didn't get better for petitioner over time. It got far worse because he couldn't prove those things. It got much better for the prosecutor because over time, the petitioner could no longer recall exactly why he was going over to his brother's house that morning. That was the thing that changed this case. There was no investigative delay. It was just put away. Now, so what's your response to the government's point that Mary Ann was with your client for 25 years after this occurred and that her testimony would have likely been affected adversely to the government? Well, first of all, she wore a wire after Mr. Koskar was arrested and released. She wore a wire and she met with Mr. Koskar and he made no inculpating statements, nothing incriminating. Then after a couple of years, they got back together. What that shows is she didn't believe he did it, not for a second. And her memory, this is a situation where the dimming of the witness's memories is not speculation. Every single witness that was critical to the case testified they couldn't recall certain events from 25 years earlier. Their memories had faded. That was their testimony. So it's not speculation that their memories had dimmed. And on critical points, it wasn't just the employee that could have been shown to the jury in that matter, it was a receipt, gone. Every piece of physical evidence, gone. That's your best case, right, the delay, the due process delay? I think that's the best argument. I don't think that it's fair to say that because we didn't specifically address the first degree murder, that it shouldn't be looked at by this court. We did address sufficiency of the evidence and the conviction was for a first degree murder. So I think that that involves all the elements of the first degree murder. Unless the court has any further questions. I think that we thank both counsel for your argument, very helpful. The case just argued is submitted.
judges: M. Smith, Owens, Settle